David Wayne JONES, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–07–01188–CR, 05–07–01189–CR.

Court of Appeals of Texas,
Dallas.

May 29, 2009.

Rehearing Overruled June 29, 2009.

Discretionary Review Refused
Feb. 3, 2010.

Kathleen A. Walsh, Public Defender's Office, Christian T. Souza, Assistant Public defender, Bradley K. Lollar, Dallas, for Appellant.

Craig Watkins, Dallas County District Attorney, Michael R. Casillas, Assistant District Attorney–Chief Prosecutor, Kimberly Pfannenstiel, Assistant District Attorney, Dallas, for State.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION

Opinion By Justice FITZGERALD.

A jury convicted appellant David Wayne Jones of violating the terms of his civil commitment on two occasions. The trial court subsequently found enhancement paragraphs true and assessed Jones's punishment at twenty years' confinement in each case. In fourteen appellate issues, Jones challenges the trial court's subject matter jurisdiction, the trial court's refusal to quash the enhancement paragraphs, the trial court's failure to instruct the jury on an issue, the trial court's exclusion of several categories of evidence, and the sufficiency of the evidence to support the jury's verdicts. We affirm the trial court's judgments.

### BACKGROUND

In 1991, Jones pleaded guilty to nineteen counts of indecency with a child. He was convicted and sentenced to concurrent sentences of fifteen years' confinement for each case. While Jones was in prison, he underwent voluntary chemical and surgical castrations. Before Jones was released, the State initiated civil commitment proceedings against him pursuant to the Civil Commitment of Sexually Violent Predators Act, TEXAS HEALTH & SAFETY CODE ANN., ch. 841 (Vernon 1999 & Supp. 2008) [hereinafter, the "Act"]. The Act sets venue of all

civil commitment proceedings in the state for Montgomery County Texas. *Id.* § 841.041(a) (petition alleging predator status to be filed in Montgomery County district court other than family court). On June 16, 2005, the 221st Judicial District Court in Montgomery County issued its Final Judgment and Order of Civil Commitment, which memorialized the jury's finding that Jones was a sexually violent predator and ordered Jones committed for outpatient treatment and supervision according to the commitment order's terms.

The commitment order required Jones to live in a halfway house in Dallas County. It contained a number of specific prohibitions for Jones, including contacting his former victims, possessing or using alcohol, and driving a motor vehicle. Jones was affirmatively required to cooperate with various monitoring systems. He was also required to "participate in and comply with a specific course of treatment, determined by the Council on Sex Offender Treatment."

Jones moved into a halfway house in Dallas County upon his release from prison in 2005.[1] He was informed of all the rules for residents of the halfway house. He was not permitted to leave the residence except for his therapy sessions, and he was driven to those sessions in a van by a staff member. As part of his treatment, beginning in October 2005, Jones was required to take the prescription drug Wellbutrin.

On or about February 20, 2006, Jones took three bus passes from a staff member's desk (the "February 20 incident"). Jones admitted taking the passes in a ther-

apy session. His admission led to a meeting that included Jones, staff members, and supervisors. At that meeting, Jones paid for two of the passes he had taken and promised to pay for the third.

Then on February 27, Jones was involved in a series of events (the "February 27 incidents"). Initially, Jones argued with his case manager Walter Brown, in Brown's office, over Jones's room assignment. Jones became angry, ripped papers off the office wall, and knocked papers off Brown's desk. When the staff driver came to take Jones to his scheduled therapy, Jones repeatedly refused to go. Later, Jones returned to Brown's office, pulled a box cutter from his pocket and cut himself in an attempt to persuade Brown to do what Jones had asked him to do. Jones was taken to the hospital for psychiatric treatment, observed, and discharged. As a result of his conduct on February 27, Jones was discharged from his therapy program.

The State initiated two criminal prosecutions of Jones for violations of the terms of his civil commitment: one based on the February 20 incident,[2] and one based on the February 27 incidents.[3] A jury convicted Jones in both cases. The trial court subsequently found enhancement paragraphs true and assessed Jones's punishment at twenty years' confinement in each case. Jones appeals.

## TRIAL COURT JURISDICTION

In his first two issues, Jones charges the trial court lacked subject matter jurisdiction over both cases below. Jones contends that in the summer of 2005, when he

---

1. The residence was the Way Back House, located in the city of Dallas.

2. The case based on the February 20 incident was numbered F–0701031–GJR in the trial court; in this Court, the case is numbered 05–07–01189–CR.

3. The case based on the February 27 incidents was numbered F–0701029–GJR in the trial court; in this Court, the case is numbered 05–07–01188–CR.

was committed, the Act conferred exclusive, continuing jurisdiction over all matters related to his commitment upon the Montgomery County district court which had ordered him committed, unless that court had specifically transferred jurisdiction to another district court. The Montgomery County court had not specifically transferred jurisdiction in Jones's cases.[4]

Both parties address the changes over time to section 841.082 of the Act. In 2003, the legislature had amended that section, in part, to read:

> Immediately after the case becomes final for purposes of appeal, the judge shall transfer jurisdiction of the case to a district court, other than a family district court, having jurisdiction in the county in which the person is residing, except that the judge retains jurisdiction of the case with respect to a civil commitment proceeding conducted under Subchapters F and G.

Civil Commitment of Sexually Violent Predators Act, 78th Leg., R.S., ch. 347, § 24, 2003 Tex. Gen. Laws 1505, 1517 (amended 2005) (current version at TEX. HEALTH & SAFETY CODE ANN. § 841.082(d) (Vernon Supp. 2008)).[5] In their briefing, both parties acknowledge that this provision required the Montgomery County district court to transfer jurisdiction to a district court in Dallas County when the case had become final for purposes of appeal.

The provision was amended again in 2005; the new subsection became effective September 1st of that year and has remained unchanged since that date. The relevant section now reads:

> The court retains jurisdiction of the case with respect to a civil commitment proceeding conducted under Subchapters F and G.

TEX. HEALTH & SAFETY CODE § 841.082(d). If we were to apply this 2005 provision, looking only to its unambiguous terms, we would conclude the Montgomery County court clearly reserved and retained only civil jurisdiction over subsequent matters relating to the commitment process itself. We would conclude general jurisdiction rules would govern potential criminal proceedings that adjudge violations of the terms of the commitment.

■ We conclude the savings clause included in the 2005 legislation resolves the jurisdictional question in Jones's cases. When the legislature made the changes it did to the Act in 2005, it also stated:

> The change in law made by this Act applies only to an individual who on or after September 1, 2005, [1] is serving a sentence in the Texas Department of Criminal Justice or [2] is committed to the Texas Department of Mental Health and Mental Retardation for an offense committed before, on, or after the effective date of this Act.

*Id.* Note on 2005 Legislation. If applicable, this sweeping provision—on its face—removed the requirement of any transfer of jurisdiction in cases both going forward and retroactively. Here the savings clause applies, as on or after September 1, 2005, Jones was committed to the Texas Department of Mental Health and Mental Retardation for an offense.

Under general rules of jurisdiction, a district court in Dallas County would have jurisdiction over the trial of a third-degree felony. *See* TEX.CODE CRIM. PROC. ANN. art. 4.05 (Vernon 2005) (district courts and criminal district courts have original jurisdiction in criminal cases of grade of felony). Venue was also proper in Dallas

---

4. Indeed, a paragraph in the commitment order that would have transferred jurisdiction to Tarrant or Dallas County was deleted by the trial court before the order was signed.

5. Subchapters F and G of the Act deal with commitment reviews and petitions for release from commitment, respectively.

County because the charged offenses were committed there. *Id.* art. 13.18. Thus, we conclude the 195th Judicial District Court in Dallas County correctly exercised jurisdiction over the prosecution of Jones for the two third-degree felonies he was charged with committing in Dallas County.

We overrule Jones's first and second issues.

## SUFFICIENCY OF THE EVIDENCE

In five of his fourteen appellate issues, Jones challenges the legal and factual sufficiency of the evidence supporting the jury's findings that he violated the requirements of his civil commitment.

### Standards of Review

In a legal sufficiency review, we apply well-established standards. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Garcia v. State,* 57 S.W.3d 436, 441 (Tex.Crim.App. 2001). We view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Vodochodsky v. State,* 158 S.W.3d 502, 509 (Tex. Crim.App.2005). The jury, as sole judge of the witnesses' credibility and the weight to be given their testimony, is free to accept or reject any or all of the evidence presented by either side. *See Margraves v. State,* 34 S.W.3d 912, 919 (Tex.Crim. App.2000).

In a factual sufficiency review, we view all of the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State,* 204 S.W.3d 404, 415 (Tex.Crim.App.2006). To reverse a case on a factual sufficiency challenge we must be able to say, with some objective basis in the record, that the great weight and preponderance of evidence contradicts the jury's verdict. *Id.* at 417. We give defer-

ence to a jury's decision regarding what weight to give conflicting testimonial evidence because that decision is based on an evaluation of credibility and demeanor, which the jury is in the better position to judge. *Lancon v. State,* 253 S.W.3d 699, 706 (Tex.Crim.App.2008).

### Trial of the February 20 Incident

The indictment addressing the February 20 incident charged Jones with violating the requirements of his June 16, 2005 civil commitment order "by stealing bus passes from the desk of Wayback House staff." Jones charges that the State "overlooked the necessity of establishing the elements of theft." Thus, in his eleventh and fourteenth issues, Jones challenges the legal and factual sufficiency of the evidence showing Jones had "intent to permanently deprive" the halfway house of the passes. In his twelfth issue, Jones challenges the legal sufficiency of the evidence showing "unlawful appropriation." And in his thirteenth issue, Jones challenges the legal sufficiency of the evidence showing the halfway house was "an individual, corporation or association."

■ We stress at the outset that Jones was not charged with the offense of theft, and the elements of theft are not appropriate standards for determining the sufficiency of the evidence to support Jones's conviction. Jones was charged with violating the terms of his civil commitment. In this case, the State was required to prove Jones stole bus passes from the staff's desk. Our review of the record establishes Jones admitted he had done so. The evidence is undisputed that Jones repaid the staff for two of the passes and promised to repay for the third when he was able. Although the act of repayment may show remorse for his act, it is not relevant to Jones's initial intent to take the property from the halfway house. We de-

termine a defendant's intent to deprive the owner of property at the time of the taking. *Wilson v. State,* 663 S.W.2d 834, 837 (Tex.Crim.App.1984). The record indicates Jones reimbursed the staff for the passes, rather than returning the passes themselves. A rational jury could have concluded Jones did so because he no longer had the passes, i.e., he had taken them and disposed of them in some fashion. And finally, the record establishes Jones knew he was not permitted to take the bus and knew only staff members could dispense the passes to residents who were permitted to use the bus. There is ample, undisputed evidence that Jones took passes from the staff desk, that he knew he was not entitled to possess the passes, and that he disposed of them in some fashion. A rational trier of fact could certainly have found Jones violated the requirements of his civil commitment order beyond a reasonable doubt by "stealing bus passes from the desk of Wayback House staff." *See Vodochodsky,* 158 S.W.3d at 509; *Watson,* 204 S.W.3d at 415.

We overrule Jones's eleventh through fourteenth issues.

### Trial of the February 27 Incidents

■ The indictment addressing the February 27 incidents charged Jones with violating the requirements of his June 16, 2005 civil commitment order "by using and exhibiting a box cutter, and by refusing to attend sex offender group therapy, and by being discharged from his Sex Offender Treatment Program." In his tenth issue, Jones contends the evidence is factually insufficient to establish that Jones acted intentionally in the charged incidents. Jones's sole argument under this issue is that Jones engaged in this conduct involuntarily: he intended to comply with his

treatment program but "he suffered a 'meltdown' caused by his Wellbutrin prescription." Jones presented evidence that he took Wellbutrin, and he presented expert evidence concerning that drug. The expert, Dr. William Flynn, explained that—unlike other antidepressants—Wellbutrin is a stimulant. Dr. Flynn testified he was surprised to learn a man in Jones's circumstance was prescribed Wellbutrin because of the side effects some patients experience from the drug. Those side effects can include suicidal thoughts, agitation, irritability, and aggressiveness. According to Dr. Flynn:

> And for people who have side effects with it, not even counting its normal effects, the side effects are pretty devastating even for normal people much less for somebody who has to stick by a lot of rules. It's a rule breaking drug, you know. People who take Wellbutrin act bad or break rules.

Dr. Flynn concluded that Jones's rule breaking was conscious, but "that consciousness, as well as his behavior, was provoked and caused by the Wellbutrin."

The State offered rebuttal expert testimony from psychiatrist, Dr. Nawras Shukair, who was on duty in the emergency room when Jones was brought there on February 27.[6] Dr. Shukair had concluded on that date that Jones's behavior in cutting himself was "manipulative and attention-seeking." He agreed that Wellbutrin is in a family of drugs that has the potential to increase anxiety and the possibility of suicide at the initial stages of treatment. He said it was hard for him to answer whether, having taken Wellbutrin for four months, Jones was in the initial stages of treatment. Dr. Shukair also testified Wellbutrin is contraindicated for patients

---

6. Dr. Shukair also testified during the State's case concerning his treatment of Jones in the emergency room.

under twenty-four years of age, but Jones was thirty-four when Dr. Shukair treated him. As to Wellbutrin's effect on Jones's behavior, Dr. Shukair testified:

> if the medication is—if it's contributing [to] Mr. Jones's behavior, it's partially, not the whole picture. And what makes Mr. Jones make that decision about cutting his wrists is not the medication by itself. I mean, it's a combination of the situation and other factors that it was hard for me to determine.

Viewing all of this evidence in a neutral light, we conclude the great weight and preponderance of evidence does not contradict the jury's finding that Jones acted intentionally in terms of the February 27 incidents. *Watson,* 204 S.W.3d at 417. The jury could accept or reject any of the expert testimony concerning the effect of Wellbutrin on Jones. The jury is in the best position to evaluate credibility and demeanor and to determine the weight to give conflicting testimony. *Lancon,* 253 S.W.3d at 706.

We overrule Jones's tenth issue.

### CHARGE ERROR

In his fifth issue, Jones contends the trial court egregiously erred in failing to instruct the jury regarding theft in the case involving the February 20 incident. Our first duty in analyzing a jury-charge issue is to decide whether error exists. *Ngo v. State,* 175 S.W.3d 738, 743–44 (Tex. Crim.App.2005); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). The trial court's duty is to incorporate into the jury charge all of the law applicable to the criminal offense set out in the indictment. *Delgado v. State,* 235 S.W.3d 244, 249 (Tex.Crim.App.2007). Jones's indictment covering the February 20 incident charged him with the criminal offense of violating the requirements of his civil commitment order, not with theft. An instruction on theft, therefore, had no place in the

charge. We conclude no error exists in the jury charge, and we overrule Jones's fifth issue.

### EXCLUSION OF EVIDENCE

In his sixth through ninth issues, Jones argues the trial court erroneously excluded evidence Jones proffered to show he had no intent to violate the civil commitment order. We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Casey v. State,* 215 S.W.3d 870, 879 (Tex.Crim.App.2007). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.*

In his sixth and seventh issues, Jones contends the trial court should have allowed evidence of "historical instances of compliance" by Jones with the commitment order. According to Jones, establishing that he complied with the order in earlier instances is relevant to prove he intended to comply with it during the times at issue at trial. However, as a general rule, we do not allow a party to offer evidence of his character or character trait—here, a propensity to abide by rules—to prove he acted (or intended to act) in conformity with that trait. *See* Tex.R. Evid. 404(a). The accused in a criminal case is an exception to this rule. Tex.R. Evid. 404(a)(1)(A). However, the accused may only offer such evidence "by testimony as to reputation or by testimony in the form of an opinion." Tex.R. Evid. 405(a). He may not offer testimony concerning specific instances of the pertinent character trait. *See Wheeler v. State,* 67 S.W.3d 879, 882 (Tex.Crim.App.2002) (appellant entitled to offer evidence of his good character under rule 401(a)(1)(A) was required to do so in accordance with procedures set out in rule 405; witness could testify only to opinion or reputation of appellant regarding character trait). Evi-

dence of specific instances of Jones's compliance with his commitment order was not admissible under our rules of evidence.

▉▉▉ Jones argues further that the State "opened the door" to this evidence by introducing documentary evidence of the requirements of Jones's civil commitment. We disagree. To prove Jones violated the terms of his commitment, the State was required to prove those terms. The only "door" that might have been "opened" by this evidence was for evidence of some different or additional terms of commitment that the State omitted, but Jones found helpful to his case. The State did not ever imply Jones had violated the terms of commitment before the charged offenses; thus, the State did not open the door to evidence of Jones's compliance prior to those offenses.

We conclude the trial court did not abuse its discretion in excluding evidence of prior compliance, and we overrule Jones's sixth and seventh issues.

▉▉▉ In his eighth and ninth issues, Jones contends the trial court should have allowed evidence that Jones underwent voluntary castration in prison. The State filed a motion in limine, seeking to exclude "any evidence that [Jones] submitted to voluntary castration." The trial court granted the motion, instructing counsel that before that matter was addressed by the defense, counsel was to approach the bench and obtain a ruling from the court. Jones argues evidence of the castration was relevant to show "the extremity of his commitment to rehabilitation." We need not address any potential relevance of the

evidence, however, because Jones has not preserved this complaint for our review. A ruling on a motion in limine does not preserve error. *Roberts v. State,* 220 S.W.3d 521, 533 (Tex.Crim.App.2007). Instead, when a motion in limine is granted, the aggrieved party must offer the evidence at trial and obtain a ruling to preserve error. *See Warner v. State,* 969 S.W.2d 1, 2 (Tex.Crim.App.1998). Our review of the record indicates Jones did not attempt to offer evidence of his voluntary castration during the guilt-innocence portion of the trial. We overrule his eighth and ninth issues as well.

## MOTION TO QUASH

▉▉▉ In his third and fourth issues, Jones complains of a ruling affecting the punishment imposed in his cases. He contends the trial court erred in refusing to quash the indictments in both cases because the offense alleged for enhancement in both indictments was also used to obtain the civil commitment order. We review the denial of a motion to quash de novo. *State v. Moff,* 154 S.W.3d 599, 601 (Tex. Crim.App.2004).

▉▉▉ The two indictments below contain identical enhancement paragraphs; each charges Jones was convicted of a felony offense of indecency with a child in Cause Number F–9142063.[7] Jones pleaded true to the enhancement paragraph for both offenses. The trial court found the paragraphs true and assessed Jones's punishment as a second—rather than a third—degree felony. Jones argues that his conviction in Cause Number F–9142063, the

---

7. The enhancement paragraphs read in full:

And it is further presented to said Court that prior to the commission of the aforesaid offense set forth in the first paragraph above, the said defendant was convicted of a felony offense of INDECENCY WITH A CHILD, on the 14TH day of JUNE, 1991, A.D., in *Cause Number F–9142063* on the

docket of 195TH JUDICIAL DISTRICT COURT, of DALLAS County, Texas, under the name of DAVID WAYNE JONES and said conviction was a final conviction. (Emphasis added.)

The emphasized cause number is sometimes written as F91–42063 or F91–42063–N in the appellate record and briefing.

enhancement felony, was used in the civil commitment proceeding to establish he was a "repeat sexually violent predator." Thus, Jones contends, the conviction in that cause was not available to enhance his punishment in these cases.

Jones relies on *McWilliams v. State*, which reaffirmed the longstanding rule that use of a prior conviction to prove an essential element of an offense bars the subsequent use of that prior conviction, in the same indictment, for enhancement purposes. *McWilliams v. State*, 782 S.W.2d 871, 875 (Tex.Crim.App.1990). Jones argues that his prior sexual offenses, including the conviction in cause F–9142063, were used to establish an essential element of the charged offenses, namely that he was a repeat sexually violent predator. That predator status was essential to Jones's commitment, and it was proved— as the Act directs—by showing Jones had been convicted of more than one sexually violent offense and a sentence was imposed for at least one of those offenses. *See* Act at § 841.003(b) (Vernon 2003). The State responds that the prior convictions are not an essential element of the charged offense in these cases. Instead, according to the State, it is only Jones's status as a person under a civil commitment order that must be proved. We agree with the State.

■ The application paragraph of the indictments charged that Jones, "being a person under outpatient civil commitment as a Sexually Violent Predator pursuant to the Final Judgment and Order of Civil Commitment, Cause Number 03–05–03117–CV, issued by the 221st Judicial District Court, Montgomery County, Texas, and signed by the Court on June 16, 2005," violated the terms of that commitment order. The State introduced the commitment order, which established Jones was indeed a person under civil commitment as the indictments charged. The State was not required to re-prove the

offenses that originally supported commitment: the commitment order is not subject to collateral attack in a proceeding involving violation of its terms. *See Adams v. State*, 222 S.W.3d 37, 55 (Tex. App.-Austin 2005, pet. ref'd).

Moreover, even if the State were required to enhance Jones's punishment with a different felony conviction than the ones used to establish Jones's status as a repeat sexually violent predator at the commitment proceeding, we would not find error. The record before us does not indicate which specific convictions were relied upon in the commitment proceeding. We know the State introduced unchallenged evidence that Jones had nineteen felony convictions for indecency with a child. *In re Commitment of David Wayne Jones*, No. 09–05–425–CV, 2006 WL 3026893, at \*2 (Tex.App.-Beaumont Oct. 26, 2006, pet. denied) (mem. op.). Whichever two convictions were used by that court to establish Jones's status, the remaining seventeen convictions were available for enhancement purposes. Jones has not shown his conviction in cause F–9142063 was not one of those seventeen available convictions.

Jones has failed to show the trial court incorrectly enhanced his punishment. We overrule his third and fourth issues.

### CONCLUSION

We have decided each of Jones's issues against him. Accordingly, we affirm the judgments of the trial court.