**Affirmed and Opinion Filed October 10, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-13-00969-CR

---

### PAUL HARVEY ANDREWS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-11-49282-T**

---

## MEMORANDUM OPINION
Before Justices Francis and Myers[1]
Opinion by Justice Francis

The trial court convicted Paul Harvey Andrews of violating the terms of his civil commitment, found two enhancement paragraphs true, and assessed punishment at life in prison. In two issues, appellant contends the trial court erred by refusing to quash the enhancement paragraphs of the indictment and by imposing cruel and unusual punishment. We affirm.

In 1985, appellant was convicted on separate charges of aggravated sexual assault of a child, and punishment was assessed and 75 years and 55 years in prison. In February 2010, before appellant was released from prison, the State filed an original petition to commit appellant

---

[1] Justice David Lewis was a member of the original panel and participated in the submission of this case, but he did not participate in the issuance of the opinion. *See* TEX. R. APP. P. 41.1(b).

under the Civil Commitment of Sexually Violent Predators Act (the Act). *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.150 (West 2010 & Supp. 2013). The Act provides for the involuntary civil commitment, by means of outpatient treatment and supervision, of a repeat sexual offender who is found to be a sexually violent predator. *Id*. §§ 841.003(a), 841.081(a). A person is a sexually violent predator under the Act if the person is a repeat sexually violent offender and suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id*. § 841.003(a). A person is a repeat sexually violent offender under the Act if he is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses. *See id*. § 841.003(b).

In accordance with the Act, the petition to commit appellant was filed in Montgomery County, Texas. *See id*. § 841.041(a) (setting venue in Montgomery County district court, not family court, for petition alleging predator status). On the day the case was set for trial, appellant told the trial judge he wanted to enter an agreed judgment and order of commitment. After determining that appellant had read the documents, had his attorney explain them to him, and understood them, the trial judge signed both documents. The agreed final judgment recited that appellant's "counsel declared that [appellant] is convinced beyond a reasonable doubt that [appellant] is a sexually violent predator" and "so stipulates." Further, the judgment recited that appellant agreed to civil commitment. The judgment adjudged appellant as a sexually violent predator and ordered that he be committed for outpatient treatment and supervision until he "is no longer likely to engage in a predatory act of sexual violence[.]" In accordance with the judgment and order, appellant was placed in a halfway house in Dallas in March 2011 after he was released from prison.

In November 2011, appellant was unsuccessfully discharged from the program and was subsequently indicted on a charge of violating the terms of his civil commitment. The

indictment alleged appellant intentionally and knowingly failed to (1) take prescribed medication, (2) comply with the requirements of his global positioning satellite monitoring system, and (3) complete the requirements of the Outpatient Sexually Violent Predator Treatment Program. In addition, the indictment contained two enhancement paragraphs alleging prior felony convictions for aggravated sexual assault in 1985 and aggravated kidnapping in 1975. Violating the terms of a civil commitment is a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.085(b) (West 2010). The enhancement paragraphs, however, increased the punishment range from a third-degree felony to twenty-five years to life in prison. TEX. PENAL CODE ANN. § 12.42(d).

Appellant filed a motion to quash the indictment's enhancement paragraphs, arguing the civil petition alleging he was a sexually violent predator was based on his convictions for the same conduct set out in the enhancement paragraphs. Evidence presented at the hearing on the motion showed that appellant had six different convictions resulting in two separate trips to the penitentiary. The trial court denied the motion.

At trial, the State presented evidence of appellant's various violations during his civil commitment. Among other things, appellant twice walked out of counseling. The first time, appellant was meeting with his counselor, Bill Bruner, for individual counseling, became agitated, and said he did not want treatment. He then walked out but returned a minute later and said he "just needed to vent." A month later, however, appellant left group therapy while members were confronting him about his "thinking errors." Appellant stood up, said his "goodbyes," and walked out. Twenty minutes later, he was found on the back porch. He told Bruner he no longer wanted to participate in the therapy program and then put his statement in writing. At that point, Bruner said there was no option but to unsuccessfully discharge appellant

from treatment for refusing to participate. The trial court found appellant guilty of violating the terms of his civil commitment and, after hearing punishment evidence, assessed a life sentence.

In his first issue, appellant argues the trial court erred in refusing to quash the enhancement paragraphs because the offenses alleged for enhancement were also used to obtain the civil commitment order. Within his issue, he acknowledges this Court's opinion in *Jones v. State*, 333 S.W.3d 615 (Tex. App.—Dallas 2009, pet. ref'd), is "directly on point." Nevertheless, he contends the opinion should be overruled as "wrongly decided."

In *Jones*, the enhancement paragraph in the indictment alleged a prior conviction for indecency with a child. Jones asserted this conviction was among the nineteen prior convictions introduced as evidence at the civil commitment trial to support the jury's finding he was a sexually violent predator. *Jones*, 333 S.W.3d at 624. Consequently, Jones complained it could not be used to enhance his punishment at his trial for violating the civil commitment order. *Id*. As in this case, Jones argued that the use of a prior conviction to prove an essential element of the offense bars the subsequent use of that prior conviction, in the same indictment, for enhancement purposes. *Id.*

We rejected Jones's argument, agreeing with the State that the prior convictions were not an essential element of the charged offense; it was only Jones's status as a person under a commitment order that needed to be proved. *Id*. We concluded the State "was not required to re-prove the offenses that originally supported commitment: the commitment order is not subject to collateral attack in a proceeding involving violation of its terms." *Id.* Moreover, we concluded the record did not indicate which specific convictions were relied upon in the commitment proceeding, so even if different convictions were required, no error was shown. "Whichever two convictions were used by that court to establish Jones's status, the remaining seventeen convictions were available for enhancement purposes." *Id*.

–4–

We decline appellant's invitation to overrule *Jones*. Moreover, we note, as did *Jones,* that even if the State were required to enhance appellant's punishment with different felony convictions than those used to establish his status as a repeat sexually violent predator at the civil trial, no error is shown. The record here does not establish which convictions were relied upon in the commitment proceeding. The commitment petition alleged appellant was a "sexually violent predator" and listed five prior convictions, including the two priors used for enhancement in this case. On the day of trial, however, appellant waived his right to jury trial and said he wanted to enter an agreed final judgment and an agreed order of commitment. Appellant represented he had read both documents, and his attorney had explained the contents of both to him. No evidence was presented. Thereafter, the trial court rendered an agreed judgment that appellant was a sexually violent predator as defined under the statute.

By agreeing to the civil judgment and order of commitment, appellant judicially admitted he is a sexually violent predator under the statute in that he had more than one prior conviction for a sexually violent offense. Appellant did not specify which of his five convictions satisfied the statute nor did the trial court make any inquiry in this area. Under these circumstances, we conclude appellant has not shown the convictions used to enhance his sentence in this case were not one of the three available for such purpose. We overrule the first issue.

In his second issue, appellant argues a life sentence for violating "administrative conditions" of his civil commitment constitutes cruel and unusual punishment. Appellant preserved his complaint in a motion for new trial.

The Eighth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits cruel and unusual punishment and requires a criminal sentence to be proportionate to the crime committed. *See* U.S. CONST. amend. VIII; *Lackey v. State,* 881 S.W.2d 418, 420 (Tex. App.—Dallas 1994, pet. ref'd). Even when a sentence is

within the range permitted by law, a sentence may in rare instances be disproportionate to the gravity of the offense. *See Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) ("Subject only to a very limited, 'exceedingly rare,' and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal.")

In determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, we begin by comparing the gravity of the offense and the severity of the sentence. *Graham v. Florida*, 560 U.S. 48, 60 (2010) (citing *Hamelin v. Michigan*, 501 U.S. 957, 1005) (Kennedy, J., concurring)). We consider the sentence imposed in light of the offender's adjudicated and unadjudicated offenses. *Culton v. State*, 95 S.W.3d 401, 403 (Tex. App.—Houston [1st Dist.] 2002, pet, ref'd). In the rare cases in which this comparison leads to an inference of gross disproportionality, we then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. *Graham*, 560 U.S. at 60. Generally, punishment assessed within statutory limits, including punishment enhanced under a habitual offender statute, is not excessive, cruel, or unusual. *See Rummell v. Estelle*, 445 U.S. 263, 284 (1980) ("[The] primary goals [of a recidivist statute] are to deter repeat offenders and, at some point in the life of one of repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time."); *see also Lackey*, 881 S.W.2d at 421 (explaining defendant's "extensive criminal record" demonstrated "a pronounced and prolonged inability to bring her conduct within the social norms prescribed" by Texas criminal laws, leading to conclusion that thirty-five-year sentence not grossly disproportionate to crime of theft of property valued at $750 or less).

Here, appellant was charged with the third-degree felony offense of violating the terms of his civil commitment. The indictment alleged two prior felony convictions, which enhanced appellant's punishment range from a third-degree felony to "life, or for any term of not more than 99 years or less than 25 years." TEX. PENAL CODE ANN. § 12.42(d). Thus, appellant's enhanced sentence of life in prison falls within the range allowed by law. Nevertheless, appellant argues the "nature of the crime" did not warrant a life sentence because "the case did not involve any activity that put society at risk." Specifically, he focuses solely on his conduct in violating the terms of his civil commitment and ignores the purpose and reason behind his civil commitment as well as his overall criminal history.

The trial court heard testimony from Kory Levingston and Bruner, appellant's case manager and counselor at the halfway house. Levingston said appellant is among the small percentage of sex offenders who have been determined to be repeat sexually violent predators, between seventy-five and ninety in Texas. Levingston said he had supervised about thirty people in the sexually violent predator program, and appellant was "near the top of the list in terms of . . . deviancy." In fact, he said appellant was the "most dangerous person" he had ever supervised.

The halfway house where appellant was housed was not a lock-down facility. Food, clothing, and transportation was provided to the parolees or offenders housed there. Strict guidelines were in place to maintain order. The treatment and supervision appellant received at the halfway house were geared to predators with a behavioral abnormality that is not amenable to traditional mental illness treatment modalities. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.001. The goal for appellant was to not have another victim.

Bruner was appellant's counselor. He testified he was initially "impressed" with "how well" appellant took responsibility for his crimes, explaining that appellant wrote "a rather descriptive paragraph" of each offense. As the treatment went on, however, Bruner began to

believe that appellant's openness had more to do with "criminal pride." He thought appellant may have been getting "vicarious enjoyment" out of re-living the offenses and lacked empathy for his victims. He said appellant was upset about his civil commitment, did not like the rules, and was "always borderline" as to whether he was going to commit to the program. Appellant did not want to look at his offenses as "anything other than what he called a sex addiction," which Bruner said was "quite a problem" in treatment. Rather than seeing his offenses as "predatory acts with violence," appellant minimized what he did as "something over which he had no control." According to Bruner, appellant had indicated to him that he had been cured, "so all the things I tried to teach him, things like how to avoid high-risk situations, how to avoid things that could make him more likely to re-offend, he didn't seem to be willing to consider." Bruner said appellant's crimes "were the most heinous probably of anybody that I have worked with" and said it was "understandable" as to why he was placed on civil commitment.

In addition to the testimony of Levingston and Bruner regarding his civil commitment, other evidence detailed appellant's sexually violent criminal history. Appellant had six prior felony convictions, beginning with four convictions in 1975, two for sexual abuse of a child and two for aggravated kidnapping. All of the offenses involved crimes against children he did not know.

In the first offense, in May 1974, appellant saw three children fishing at a pond—two girls, age 7, and a ten-year-old boy. Appellant took one of the girls and told the other two to turn around and not make any noise. He removed the girl's clothes, fondled her vagina, and forced her to perform oral sex on him until he ejaculated. Three months later, he was driving down a road and saw a girl and boy, both about ten or twelve years old, enter a vacant house. He raped the girl at knifepoint and had the boy turn so that he could not watch. Three months after that, he was driving at night and picked up two fourteen-year-old girls. He pulled out a knife and

intended to rape them, but they escaped. The following month, he forced a seven-year-old girl into his car, drove her to a secluded area, told her he had a knife, and forced her to undress. He forced the child to perform oral sex on him. Afterwards, he returned her to the same neighborhood from which he kidnapped her. Appellant pleaded guilty and was given twenty-year, concurrent sentences for these offenses and was released from prison in October 1983.

Less than two months later, in December 1983, he saw a young boy, about five years old, and his eleven-year-old sister at a park near a creek. He lured them to a drainage area out of sight. He grabbed the girl and told her to remove her pants. When she screamed, he pulled out a screwdriver and threatened to stab her. He told her brother to turn around, and he licked the girl's vagina and forced his penis in her mouth. The younger brother began yelling, and appellant ran off. Six months later, in May 1984, he was riding his motorcycle in a field when he saw a fifteen-year-old girl. He grabbed her breast and put a knife to her throat and demanded oral sex. When she refused, he slapped her and forced her to perform oral sex on him until he ejaculated in her mouth. He was arrested in February 1985 after exposing himself to a van of preschool children outside a library. He pleaded guilty to the December 1983 and May 1984 offenses and received sentences of 75 and 55 years. He was imprisoned on these offenses, awaiting release, when the State filed the civil commitment petition.

Appellant's extensive criminal record, which involves predatory sex crimes against children, shows a "pronounced and prolonged inability" to bring his conduct within social norms prescribed by our laws. See *Lackey*, 881 S.W.2d at 422. Although he has not committed a sexual offense in thirty years, he has also been imprisoned during that time and has not had the opportunity. While being treated during his civil commitment, appellant was not willing to apply the therapeutic methods that Bruner taught to help avoid high-risk situations because appellant believed he was "cured" of his "sex addiction." Ultimately, he walked out of counseling and told

Bruner he no longer wanted to participate in therapy. Given appellant's refusal to accept therapy and refusal to accept responsibility for his acts, the trial court could have believed appellant would continue to pose a great danger to the public, and in particular, children. Having reviewed the evidence, we cannot conclude appellant's life sentence is grossly disproportionate. We overrule the second issue.

We affirm the trial court's judgment.


Do Not Publish
TEX. R. APP. P. 47
130969F.U05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PAUL HARVEY ANDREWS, Appellant

No. 05-13-00969-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-11-49282-T.
Opinion delivered by Justice Francis with Justices Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered October 10, 2014