

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00036-CR

———————————————

JESSE SMITH, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. F17-1279-431

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Jesse Smith appeals his conviction for aggravated assault with a deadly weapon against his wife. In his first issue, Smith argues that the evidence is insufficient to prove that he did not act out of necessity. According to Smith, when he tied Wife to the couple's bed, he was doing so out of necessity to prevent Wife from committing suicide, and not, as Wife testified, to keep her from running as he sliced her with a knife. We hold that the evidence is sufficient to disprove the defense of necessity.

In his second issue, Smith argues that the trial court erred in excluding evidence of Wife's past suicide attempts. We hold that under Rule 405, these specific instances of conduct were not admissible to prove Wife's character traits.

In his third issue, Smith contends that his motion to recuse the trial judge should have been granted. Smith's case for recusal rests entirely on the trial judge's harsh comments. We hold that these remarks do not rise to a level that requires recusal. We therefore affirm.

## I. BACKGROUND

The evidence at trial disclosed that on October 14, 2016, police were dispatched to address a report of family violence at Smith's apartment. Wife told police that Smith had hit her in the legs, arms, and stomach with a baseball bat. Smith was not at the scene, so police collected evidence and eventually left. On November 5, 2016, police arrested Smith. A municipal judge issued an emergency protective order the following morning. The order was still active on the afternoon of November 19, 2016, when

2

Wife's ex-husband came to check on her. Her ex-husband heard arguing within the apartment, so he called 911.

Officer Matthew Bender was dispatched to the apartment. At trial, Officer Bender testified that when he knocked on the door, he heard a female voice scream for help. The officer explained that he broke a window to gain entry into the apartment, where he found Wife bloodied and tied to the couple's bed. Wife testified that Smith had beat her and cut her with a knife. Smith told the jury that Wife was suicidal and attempting to harm herself, and all of her injuries resulted from his attempts to wrestle knives away from her.

After the close of the evidence, the jury found Smith guilty of aggravated assault with a deadly weapon—a knife—and Smith pleaded true to an enhancement for a prior felony conviction.[1] The trial judge assessed punishment at sixty years for the offense in question. Smith appeals.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, Smith argues that the evidence is insufficient to support the jury's rejection of his necessity defense. He argues that any rational view of the evidence should have convinced the jury that his actions were necessary to prevent Wife from committing suicide, and thus the aggravated assault was justified.

---

[1]Smith was also charged with and convicted of (1) another offense of aggravated assault with a deadly weapon—a bat—for the events of October 14, 2016, and (2) violation of a protective order for the events of November 19, 2016. Those convictions are at issue in separate appeals.

The necessity defense is a justification defense. *Davis v. State*, 490 S.W.3d 268, 275 (Tex. App.—Fort Worth 2016, pet. ref'd). For a justification defense, the defendant has the initial burden of producing some evidence to support the defense. *See Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). The State thereafter has the burden of persuasion in disproving the defense. *Alvarez v. State*, Nos. 02-16-00444-CR, 02-16-00445-CR, 2018 WL 651210, at *4 (Tex. App.—Fort Worth Feb. 1, 2018, no pet.) (mem. op., not designated for publication); *see Braughton*, 569 S.W.3d at 608. This burden does not require the State to produce evidence refuting the necessity claim; rather, the burden requires the State to prove its case beyond a reasonable doubt. *Alvarez*, 2018 WL 651210, at *4; *see Braughton*, 569 S.W.3d at 608. A jury verdict of guilty is an implicit finding rejecting the defendant's necessity theory. *Braughton*, 569 S.W.3d at 609; *Alvarez*, 2018 WL 651210, at *4.

In reviewing the sufficiency of the evidence to support the jury's rejection of a necessity defense, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also would have found against the defendant on the necessity issue beyond a reasonable doubt. *Alvarez*, 2018 WL 651210, at *4; *Remillard v. State*, No. 02-13-00074-CR, 2014 WL 70112, at *4 (Tex. App.—Fort Worth Jan. 9, 2014, no pet.) (mem. op., not designated for publication); *see Braughton*, 569 S.W.3d at 609. We presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Sanders v. State*, No. 02-11-00091-CR, 2012 WL

4

2579542, at *2 (Tex. App.—Fort Worth July 5, 2012, no pet.) (per curiam) (mem. op., not designated for publication).

At trial, Wife's ex-husband testified that on the afternoon of November 19, 2016, Wife called him and asked him to come check on her. He recalled that when he arrived at the apartment, he called Wife eight to ten times, but she did not answer. When he approached Smith's apartment, he heard Wife arguing with Smith inside, so he called 911.

Officer Bender was dispatched. By Officer Bender's account, when he knocked on the door, he heard a female voice yell for help, and "a blood curdling scream after that, like what you would hear from a slasher movie." Officer Bender recalled that he first tried to kick in the front door, and when that did not work, he broke a window to gain entry into the apartment. Officer Bender explained that inside, he found Wife bleeding and tied to the couple's bed, with Smith tightening her restraints. According to Officer Bender's description, when Smith was arrested, he "acted as if he was shocked and asked me why we were there. And I explained to him, and his response was they were having rough sex." Officer Bender said that he did not believe Smith's explanation, both because Smith was fully clothed, and because Wife had a bloodied face and was screaming for help. Officer Bender escorted Smith to a squad car as other officers arrived and went inside to help Wife.

Detective Christopher Seaman recalled that when he entered the apartment, he found Wife still lashed to the bedposts, with her arms bound by multiple belts and a

5

necktie. According to Detective Seaman, Wife was frantic and crying, and she said Smith had tied her up and stabbed her. Detective Seaman testified that he cut the bindings and documented her injuries, which included severe swelling on her face, several contusions, bleeding, and stab wounds. Detective Seaman related that after paramedics arrived, he stayed at the scene to collect evidence, including multiple knives found in the bedroom or its closet, one of which had dried blood on it.

In her testimony, Wife explained how the assault unfolded. She explained that she had arranged to have her locks changed to keep Smith out of the apartment, so when she heard a knock at the door, she assumed it was someone on staff with the apartment. Wife testified that as soon as she opened the door, Smith pushed his way in, smelling of alcohol. Wife said that she ran to call the police, but Smith caught her, threw her on the floor, and began punching and kicking her. She recalled that Smith then threw her on the bed and made her take her pants off to keep her from running. According to Wife, Smith told her that by calling the police, she had ruined his life, so he was going to take her life in return, and he would do it slowly:

Q. And what else did he tell you?

A. That he wasn't gonna do it quickly. He was gonna make me suffer. He was going to keep hitting me. He was going to get knives and cut me. And he was gonna make it really bad. But he wouldn't kill me until the next day.

Wife recalled that she tried to get up, so Smith tied her to the headboard. Wife testified that Smith proceeded to beat her, first with a bottle of alcohol and then with a belt,

whipping her with the buckle. According to Wife, Smith retrieved knives from the kitchen, telling her that "maybe he wouldn't kill me, maybe he would just make it to where I couldn't walk. And he was gonna cut the tendons in my legs, and if I tried to get up again he was gonna do that so I couldn't walk . . . ." He then cut her below the kneecap while taunting her, Wife stated, calling her "a fat bitch and an ugly whore." Wife told the jury, "I thought I was gonna die. And I was just praying that it would be quick."

Wife testified that when police broke in through the back window, Smith apologized to her and asked her to tell police that she and Smith were just having rough sex. She said that Smith grabbed some of the knives and threw them in the closet. Smith was then arrested.

Smith also testified at trial, and he offered a very different recollection of events. He explained that the day before the assault, the couple had an argument as he drove Wife to work. When Wife opened the car door to get out, Smith testified, the couple's dog escaped from the vehicle, which made Wife angry. According to Smith, Wife "said she was gonna put my butt in jail" when they finally tracked down the dog. Smith testified that he thought it was best if he and Wife spent the night apart, so he stayed with his brother.

Smith attested that the next day, he returned to the apartment around 4:00 p.m., and Wife accused him of staying at another woman's house. Smith recalled that he tried to change the subject and asked to borrow Wife's phone, but she proceeded to smash

her own phone against the countertop. According to Smith, he then told Wife he was leaving and walked toward the front door, but Wife blocked his path and began hitting him and grabbing for the car keys. Smith explained that he walked around her, and after Wife grabbed his shirt from behind, he heard a crash. Wife had fallen to the floor, he said, and she started crying as her face reddened and began to swell. Smith testified that he told her to put her pants on so he could take her to the doctor, but Wife didn't answer. Smith explained that her crying worsened for several minutes until Wife was hysterical, saying "that she was tired of this life." In Smith's telling, he yelled at her to stop it, but Wife was despondent by this point, and she announced that "she didn't want to live anymore." Smith testified that Wife walked to the kitchen utensil drawer and came up clutching "several knives in her hand." Smith recalled that as Wife walked toward the bedroom, he grabbed her arms, shouting "drop the knives," and when Wife did not respond, he jerked downward in hopes of disarming her. Instead, he said that Wife fell to the ground, causing Smith to topple over her and smash her face into the floor.

Undeterred, Wife rose up and again reached for a knife, Smith explained, so he wrestled her arms back, still yelling at her to drop the knife. Smith narrated the details of the lengthy scuffle that ensued, which ended only when he had thrown multiple knives into the closet, attempted to toss another knife behind the bed, and kicked still another knife out of Wife's reach. Smith testified that Wife then cried for roughly five minutes, and when she at last calmed, she apologized and asked to be let up off the

floor. However, according to Smith, this was a ruse: as he let Wife up, she scrambled towards yet another knife that lay just on the other side of the bed and put it to her throat. Smith recalled that he dove into her, tackling her onto the bed. Smith testified that as he grappled for the knife, he told Wife that he loved her, but she began yelling obscenities at him. Smith explained that, so he could go get help safely, he tied Wife up using a belt and a necktie that were already bound to the bed frame from the couple's prior love-making. Smith told the jury that he then moved the knives, attempted to use the broken telephone, and briefly attended to the family dog before returning to Wife's side. It was then that Smith heard a knock at the door, and Wife, anticipating that it was the police, screamed at him multiple times not to tell them what had happened. Smith explained that at the last moment, Wife convinced him to lie about the nature of her injuries and to untie her, which he was doing when an officer charged in and arrested him. In conclusion, Smith declared that all of Wife's injuries were the result of attempts to keep her from harming herself.

Viewing all of the evidence in the light most favorable to the verdict, we conclude that the jury could have rationally found elements of aggravated assault beyond a reasonable doubt. *See Braughton*, 569 S.W.3d at 609. A person commits the offense of assault if the person intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1). Aggravated assault occurs if the person commits an assault under Section 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault. *Id.* § 22.02(a)(2). Smith does not deny that he

9

assaulted Wife or that the knife, in this context, constituted a deadly weapon. *See Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004) (quoting Tex. Penal Code Ann. § 1.07(a)(17)(B)). Indeed, if he had denied these things, the defense of necessity would not have been available to him. *See Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010) (noting that justification defenses such as necessity fall within the confession-and-avoidance doctrine, which requires a defendant to admit the charged conduct before the defense will be available).

Rather, his sole defense is that his conduct was necessary to prevent Wife from harming herself. A necessity defense requires that the defendant reasonably believe that his conduct is immediately necessary to avoid imminent harm. *Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016) (citing Tex. Penal Code Ann. § 9.22). "Imminent" has been defined as "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Id.* The Penal Code defines "reasonable belief" as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Harper v. State*, 508 S.W.3d 461, 468 (Tex. App.—Fort Worth 2015, pet. ref'd) (quoting Tex. Penal Code Ann. § 1.07(a)(42)).

The jury apparently disbelieved Smith's testimony (that his actions were necessary to save Wife from herself) and instead believed the State's evidence (that the police saved Wife from Smith). We are generally required to defer to the jury's reckoning of credibility, which is supported by the record in multiple ways. *See Remillard*, 2014 WL 70112, at *5. First, the jury could have rationally doubted Smith's

10

testimony in light of his admission that he initially lied to police about the source of Wife's injuries, asserting that they were the result of rough sex.[2]  Second, whereas Smith's testimony changed over time, Wife's trial testimony remained consistent with similar narratives that she gave to police and paramedics immediately after the assault and while still in turmoil.[3]  Third, Smith's version of events was supported only by his own self-serving testimony.[4]  Fourth, the jury could have also reasonably believed that Smith's elaborate version of events—an extended series of falls and wrestling matches that left Smith uninjured, but that left Wife bound, stabbed, and badly battered—was

---

[2]*See Hightower v. State*, No. 09-16-00289-CR, 2017 WL 4413936, at *3 (Tex. App.—Beaumont Oct. 4, 2017, pet. ref'd) (mem. op., not designated for publication) (deferring to the jury's rejection of a necessity defense, in part because appellant's "admission that he initially lied to police" could have rationally led the jury to doubt appellant's credibility).

[3]*See Beltran v. State*, No. 02-12-00193-CR, 2013 WL 2095776, at *1 (Tex. App.—Fort Worth May 16, 2013, pet. ref'd) (per curiam) (mem. op., not designated for publication) (holding the evidence sufficient because, *inter alia*, the abuse victim's trial testimony was consistent with multiple accounts she gave on the day of the assault); *see also Couchman v. State*, 3 S.W.3d 155, 159 (Tex. App.—Fort Worth 1999, pet. ref'd) (explaining that excited utterances, made while still under the influence of "emotion, excitement, fear, or pain" and before having the opportunity to fabricate, are generally regarded as more "trustworthy").

[4]*See Remillard v. State*, No. 02-13-00074-CR, 2014 WL 70112, at *5 (Tex. App.—Fort Worth Jan. 9, 2014, no pet.) (mem. op., not designated for publication) (upholding rejection of necessity defense because of "the complete absence of other evidence to substantiate appellant's testimony").

less plausible than Wife's more straightforward account.[5] Viewing all of the evidence in the light most favorable to the verdict, we hold that any rational trier of fact could have found against Smith on the issue of necessity beyond a reasonable doubt. *See Braughton*, 569 S.W.3d at 609. We overrule Smith's first issue.

## III. EXCLUSION OF EVIDENCE

In his second issue, Smith contends the trial court abused its discretion by excluding evidence of Wife's prior suicide attempts. Outside the presence of the jury, Smith proffered Wife's ex-husband's testimony that during his marriage with Wife, she had twice attempted suicide by taking pills. Smith contends that this evidence of Wife's propensity to attempt suicide was directly relevant to his necessity defense: that he only injured Wife to head off the imminent threat of her suicide attempt.

An appellate court reviews a trial court's ruling on the admission of evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Id.* Under this standard, the trial court's decision to admit or exclude evidence will be upheld as long as it was within the zone of reasonable disagreement. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). We will uphold the trial court's ruling if it was correct on any theory of law

---

[5] *See Rex v. State*, No. 05-98-02170-CR, 2000 WL 1711834, at *4 (Tex. App.—Dallas Nov. 14, 2000, no pet.) (not designated for publication) (deferring to rejection of necessity defense, in part because the altercation between husband and wife left a "tremendous disparity in the damage inflicted upon the two parties involved").

12

applicable to the case, in light of what was before the trial court at the time the ruling was made. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

Generally, we do not allow a party to offer evidence of a person's character trait—here, a propensity to attempt suicide—to prove she acted in conformity with that trait. *Jones v. State*, 333 S.W.3d 615, 622 (Tex. App.—Dallas 2009, pet. ref'd); *see* Tex. R. Evid. 404(a)(1). The victim in a criminal case is an exception to this rule. Tex. R. Evid. 404(a)(3)(A); *Tate v. State*, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998). However, on direct, the accused may offer such evidence only by reputation or opinion testimony, and he may not offer testimony concerning specific instances of the pertinent character trait. Tex. R. Evid. 405(a)(1); *Ex parte Miller*, 330 S.W.3d 610, 619 n.22 (Tex. Crim. App. 2009) (quoting *Tate*, 981 S.W.2d at 192); *Jones*, 333 S.W.3d at 622; *see also Beatty v. State*, No. AP-75,010, 2009 WL 619191, at *9 (Tex. Crim. App. Mar. 11, 2009) (per curiam) (not designated for publication) (excluding evidence of a victim's prior suicide attempt on this basis). Specific instances of the victim's pertinent trait are allowable in rebuttal after the trial court admits reputation or opinion testimony concerning the trait. Tex. R. Evid. 405(a)(1); *Evans v. State*, 876 S.W.2d 459, 463–64 (Tex. App.—Texarkana 1994, no pet.); *see Wilson v. State*, 71 S.W.3d 346, 350 (Tex. Crim. App. 2002); *Villarreal v. State*, 504 S.W.3d 494, 523 (Tex. App.—Corpus Christi–Edinburg 2016, pet. ref'd); *Burke v. State*, 371 S.W.3d 252, 261 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd, untimely filed).

Here, admission of specific instances of Wife's conduct would be in order only if the State had already put on reputation or opinion testimony concerning her *lack* of suicidal tendencies. The State did not put on any such testimony. Thus, specific instances of prior conduct relating to this trait were not admissible under our rules of evidence.

Smith also submits that the trial court's evidentiary ruling denied him "the fundamental right to present a meaningful defense," in violation of constitutional guarantees. There are two distinct scenarios in which rulings excluding evidence might rise to the level of a constitutional violation: (1) when a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence that is vital to his defense; and (2) when a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence that forms such a vital portion of the case effectively precludes the defendant from presenting a defense. *Williams v. State*, 273 S.W.3d 200, 232 (Tex. Crim. App. 2008). In the first scenario, "the constitutional infirmity is in the arbitrary rule of evidence itself." *Id.* (quoting *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002)). In the second scenario, "the rule itself is appropriate, but the trial court erroneously applies the rule to exclude admissible evidence to such an extent that it effectively prevents the defendant from presenting his defensive theory." *Id.* (quoting *Wiley*, 74 S.W.3d at 405).

As to the first scenario, Smith has not argued that any rule of evidence is inherently arbitrary. As to the second scenario, we have already held that the trial court

14

did not abuse its considerable discretion, and we therefore need not consider whether any abuse rose to the level of a constitutional violation. *See Rhomer*, 569 S.W.3d at 669. We overrule Smith's second issue.

## IV. RECUSAL

In his third issue, Smith contends that the administrative judge abused his discretion by not recusing the trial judge, Jonathan Bailey. For the reasons set forth in our opinion regarding cause number 02-19-00035-CR, we disagree and overrule Smith's third issue.

## V. CONCLUSION

We affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 6, 2020