

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00253-CR

EDWARD DEMOND REESE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 46th District Court
Hardeman County, Texas
Trial Court No. 4419; Honorable Dan Mike Bird, Presiding

May 4, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Edward Demond Reese, appeals from his convictions by jury of the offenses of murder[1] and unlawful possession of a firearm by a felon,[2] and the resulting concurrent sentences of sixty years for the conviction of murder[3] and ten years for the

---

[1] TEX. PENAL CODE ANN. § 19.02(c) (West 2019).

[2] TEX. PENAL CODE ANN. § 46.04(a)(2) (West Supp. 2019).

[3] This is a first degree felony punishable by imprisonment for life or for any term of not more than ninety-nine years or less than five years and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.32 (West 2019).

conviction of unlawful possession of a firearm by a felon.[4]  Appellant challenges his convictions through six issues contending the trial court erred by (1) refusing to allow testimony that the victim carried a gun, (2) refusing to allow testimony concerning the victim's THC level, (3) refusing to allow certain deposition testimony, (4) refusing to allow testimony concerning the victim's propensity to carry a gun, (5) denying a motion for directed verdict regarding the unlawful possession of a firearm charge, and (6) denying a sudden passion instruction.  We will affirm.

### BACKGROUND

The facts underlying Appellant's prosecution are largely undisputed.  Appellant and the victim, Taylor Garcia, had known each other for several years and the two had negative interactions prior to the incident that led to Garcia's death.  The record shows that on August 28, 2018, Appellant was outside his apartment, talking with his cousin and another man when Garcia came up to the men and spoke to Appellant, asking "What's good?"  After shaking Appellant's cousin's hand, he turned to Appellant, saying "I know you ain't on no beef" and came towards him in a seemingly aggressive manner.  At that moment, Garcia reached towards his waistband and Appellant shot him three times, resulting in his death.

At trial, Appellant testified he acted in self-defense.  He claimed he shot Garcia after Garcia approached him and reached towards his waistband as though he were reaching for a gun.  Appellant told the jury he "feared for [his] life" because he and Garcia had a prior altercation during which Garcia had fired a gun towards him.

---

[4] This is a third degree felony punishable by imprisonment for any term of not more than ten years or less than two years and a fine not to exceed $10,000.  TEX. PENAL CODE ANN. § 12.34 (West 2019).

**ANALYSIS**

**ISSUES ONE, THREE, AND FOUR—REFUSAL TO ADMIT TESTIMONY**

Via his first, third, and fourth issues, Appellant contends the trial court erred in refusing to allow evidence concerning occasions on which Garcia carried a gun and acted in an aggressive manner. Appellant argues that without that evidence, he was unable to show Garcia was the first aggressor, an aspect relevant to his defensive theory of self-defense.

At trial, Appellant sought admission of the live testimony of two witnesses and the deposition testimony of another. He wanted one witness, Tommy Lee Hill, to be permitted to testify about Hill's 2011 altercation with Garcia during which Garcia "pulled a gun" on Hill while Appellant was present. Appellant also wanted the testimony of his cousin, Marcus Reese, to be admitted so that he could testify that he had seen Garcia with a gun on his waist "a lot of times." Lastly, Appellant sought introduction of the deposition testimony of Nicholas Duncan, during which Duncan said Garcia previously robbed him.

We review a trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010) (citing *Green v. State*, 934 S.W.2d 92, 104 (Tex. Crim. App. 1996)). *See also Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court does not abuse its discretion unless its decision lies outside the zone of reasonable disagreement. *Martinez*, 327 S.W.3d at 736 (citation omitted). Accordingly, we will uphold the trial court's ruling if it was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was

3

made.  *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005) (citing *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004)).

Generally, a party is not permitted to offer evidence of a person's character trait, such as aggression or violence (as asserted by Appellant herein), to prove that the person acted in conformity with that trait at or during the time in question.  *Smith v. State*, No. 02-19-00036-CR, 2020 Tex. App. LEXIS 1079, at *14 (Tex. App.—Dallas Feb. 6, 2020, no pet. h.) (mem. op., not designated for publication) (citing *Jones v. State,* 333 S.W.3d 615, 622 (Tex. App.—Dallas 2009, pet. ref'd); TEX. R. EVID. 404(a)(1)).  However, evidence of the victim's character traits can be admissible in a criminal case as an exception to this general rule.  *Smith*, 2020 Tex. App. LEXIS 1079, at *14 (citing TEX. R. EVID. 404(a)(3)(A); *Tate v. State*, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998)).  On direct examination, the accused may offer "such evidence only by reputation or opinion testimony, and he may not offer testimony concerning specific instances of the pertinent character trait."  *Smith*, 2020 Tex. App. LEXIS 1079, at *14 (citing TEX. R. EVID. 405(a)(1)).  Specific instances of the victim's relevant trait are permissible in rebuttal after the trial court admits reputation or opinion testimony concerning the trait.  *Smith*, 2020 Tex. App. LEXIS 1079, at *14 (citation omitted).

The rules of evidence "permit the defendant to offer evidence concerning the victim's character for violence or aggression on two separate theories when the defendant is charged with an assaultive offense[.]"  *Ex parte Miller*, 330 S.W.3d 610, 618-19 (Tex. Crim. App. 2009).  First, the defendant may offer reputation or opinion testimony or evidence of specific prior acts of violence by the victim to show the "reasonableness of defendant's claim of apprehension of danger" from the victim.  *Id.* (citing *Torres v. State*,

71 S.W.3d 758, 760 & n.4 (Tex. Crim. App. 2002); *Dempsey v. State*,159 Tex. Crim. 602, 266 S.W.2d 875, 877-78 (1954)). This is known as "communicated character" because the defendant is aware of the victim's violent tendencies and perceives a danger posed by the victim, regardless of whether the danger is real. *Ex parte Miller*, 330 S.W.3d at 618 (citation omitted). Under this theory, the defendant is attempting to prove his own self-defensive state of mind and the reasonableness of that state of mind. *Id.* (citations omitted).

Secondly, a defendant may offer evidence of the victim's character trait for violence to demonstrate that the victim was, in fact, the first aggressor. *Ex parte Miller*, 330 S.W.3d at 619. This use is called "uncommunicated character" evidence because "it does not matter if the defendant was aware of the victim's violent character. The chain of logic is as follows: a witness testifies that the victim made an aggressive move against the defendant; another witness then testifies about the victim's character for violence, but he may do so *only* through reputation and opinion testimony under Rule 405(a)." *Id.* (citations omitted).

We first note that admission of specific instances of Garcia's conduct would be permissible only in the event the State had already introduced reputation or opinion testimony concerning Garcia's lack of aggression or violence. *Smith*, 2020 Tex. App. LEXIS 1079, at *15. Here, the State did not do so; therefore, specific instances of Garcia's prior conduct relating to his violent or aggressive character were not admissible during the State's case-in-chief. *Id.* Also, the testimony offered by Hill, Marcus, and Duncan was not reputation or opinion testimony as required under the applicable rule. *See Ex*

*parte Miller*, 330 S.W.3d at 619. Therefore, the trial court was within its discretion to exclude the evidence on that basis.

Even though the evidence proffered by Appellant on this subject was specific instances of Garcia's "bad conduct," i.e., not in the form of reputation or opinion testimony and thus inadmissible on that basis alone, we will nevertheless discuss the admissibility of the evidence in more detail. Here, Appellant sought to introduce the deposition testimony of Duncan in which Duncan claimed Garcia robbed him while Duncan was attempting to buy marijuana from Garcia. The alleged incident occurred in 2016. Duncan testified he went to Garcia's home to purchase marijuana, but Garcia robbed him. Duncan testified that Garcia "saw in my pocket my money and snatched it and took off running." According to Duncan, Garcia pushed him but did not otherwise threaten him and, to his knowledge, did not have a gun in his possession at the time. The proffered evidence did not indicate Appellant was aware that Garcia had ever robbed Duncan. Because Appellant was unaware of Duncan's character for violence from this incident, this evidence would not have supported Appellant's claim regarding the reasonableness of his apprehension of danger from Garcia. Consequently, this was not "communicated character" evidence that could be introduced, and the trial court was within its discretion to refuse to admit it. *Ex parte Miller*, 330 S.W.3d at 618. Additionally, this evidence does not fit the "uncommunicated character" type of evidence because Duncan did not provide any testimony regarding Garcia's use of deadly force or a firearm. *Id.* at 619. Therefore, the trial court was well within its discretion to conclude Duncan's deposition testimony was inadmissible.

We also find the trial court acted within its discretion by excluding Marcus's proffered testimony. Appellant sought to introduce Marcus's testimony that he had seen Garcia "a lot of times" when a gun was visible in Garcia's waistband. The mere fact that Marcus had seen Garcia in possession of a gun on several occasions did not make Appellant's claim of apprehension of danger from Garcia more or less probable, nor did it show that Garcia acted in any aggressive or violent manner on the occasion in question, especially given Marcus's testimony that when he saw Garcia with a gun, Garcia was "[j]ust hanging out[.]" *See Ex parte Miller*, 330 S.W.3d at 618-19.

We also find the trial court did not abuse its discretion in excluding Hill's testimony. Appellant proffered Hill's testimony that, in 2011, Garcia pulled out two firearms when Hill confronted him about a vehicle burglary. While Hill stated several people were with him that day, including Appellant, neither Hill nor Appellant testified Appellant ever saw the incident or was even aware of it on the date Garcia was killed. Hill also testified that while Garcia never exhibited a gun to him on any other occasion, he "just knew he carried them . . . . I figured anybody that was there knew he carried guns any time after that." Because it is not clear from the testimony whether Appellant was aware of this incident, we cannot say the evidence was of the "communicated character" nature such that it was relevant to show Appellant's apprehension of danger from Garcia. While it might be close to the nature of "communicated character" evidence, the evidence is not admissible under this theory because it did not show Appellant as being aware of Garcia's aggressive nature, nor did it support a showing of animosity towards Appellant by Garcia. Furthermore, the specific purpose for which Appellant was seeking admission of Hill's testimony was never

7

made clear.  Given this, we cannot say the trial court abused its discretion in excluding Hill's testimony.

Furthermore, even if we were to assume the trial court erred in refusing to admit any of the proffered evidence, we do not find Appellant was harmed by that refusal.  The erroneous exclusion of evidence offered under the rules of evidence generally constitutes non-constitutional error, reviewable under rule of appellate procedure 44.2(b).  *See* TEX. R. APP. P. 44.2(b); *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007).  With respect to non-constitutional error, error is harmless if we have a fair assurance that the error did not influence the jury, or had but a slight effect.  *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (citation omitted).

Claiming he acted in self-defense, Appellant testified that he was in fear for his life. He told the jury the reason he feared for his life was the fact that Garcia had previously fired a gun in his direction.  Another witness, Jay Vasquez, was allowed to testify about that incident.  Vasquez testified that in July 2018, he and Appellant were outside Appellant's apartment when Garcia confronted them.  On that occasion, Garcia went into his apartment and came out with a gun and "shot it towards" Appellant.  He later said Garcia "shot it up in the air."  Appellant also testified to this event.  He agreed he told police that day that he heard gunshots but did not see Garcia with a gun.  Nevertheless, Appellant told the jury he shot Garcia on the date in question because he thought Garcia was reaching for a gun in his waistband.  He explained that he thought Garcia was going to shoot him because he had tried to do so a month previously.  Based on the record before us, we find Appellant was fully able to present his defensive theory and the trial court's refusal to admit the other proffered evidence did not unreasonably hinder his effort.

*Potier v. State*, 68 S.W.3d 657, 658 (Tex. Crim. App. 2002); *Smith*, 2020 Tex. App. LEXIS 1079, at *16 (citing *Rhomer*, 569 S.W.3d at 669).

Furthermore, the evidence showing Appellant did not act in self-defense was significant. Two witnesses testified Garcia was not aggressive towards Appellant during the incident that led to Garcia's death. Both witnesses said Garcia and Appellant "exchanged" words and were not particularly friendly towards one another, but neither said Garcia was actively aggressive towards Appellant. Furthermore, the medical examiner testified Garcia suffered three gunshot wounds *to the back*, any one of which would have been fatal, a fact that is inconsistent with Appellant's testimony that he shot Garcia in the chest as Garcia reached for his waistband.[5] Consequently, we find any error in the trial court's exclusion of proffered evidence was harmless.

We overrule Appellant's first, third, and fourth issues.

### ISSUE TWO—EXCLUSION OF TESTIMONY CONCERNING GARCIA'S THC LEVEL

In Appellant's second issue, he argues the trial court abused its discretion when it refused to allow a physician to testify concerning Garcia's THC level as ascertained during the autopsy of his body. Again, we find the trial court did not err in disallowing that evidence.

As we discussed in our analysis concerning the exclusion of testimony above, an appellate court reviews the trial court's ruling concerning admission of evidence, including its decision of whether the probative value of evidence was substantially outweighed by

---

[5] Appellant testified he shot Garcia "five times. The first four I know was, like, in his front . . . when I opened my eyes, I fired again. That's when he turned and hit him in the back."

9

the danger of unfair prejudice, under an abuse of discretion standard. *Martinez*, 327 S.W.3d at 736 (citation omitted). Under this standard of review, the trial court does not abuse its discretion "unless its determination lies outside the zone of reasonable disagreement." *Id.* (citation omitted).

At trial, Appellant argued the physician's testimony that Garcia had THC in his urine at the time of his death was relevant to Appellant's contention that Garcia was the aggressor in the incident because the THC might have affected Garcia's judgment. During a hearing outside the presence of the jury, counsel asked the physician whether the toxicology report indicated the presence of drugs in Garcia's system at the time the autopsy was performed. The physician responded that the "screening of urine that was collected at the time was positive for THC." She further explained that THC is the "active component of marijuana." She then elaborated, saying that when THC is present in the urine, that means the THC has been metabolized through the body and is not active in the body. She confirmed that no blood tests were taken to determine the level of THC, if any, in Garcia's blood at the time of the autopsy. The physician further noted that the report contained a "little asterixis" next to the result with a comment that said "[t]his positive screening result was not confirmed." The physician then stated that if THC is "active in the blood at the time, certainly there can be some behavior changes." With respect to the nature of those anticipated changes, she said she has primarily heard that people "have more of a relaxed mood, a little happier, probably increased appetite, but everybody is going to react a little different to certain substances." When asked, she also agreed that THC could affect a person's judgment. Based on that record, the trial court excluded the testimony, finding that the positive THC result was not confirmed and thus

was irrelevant, would tend to confuse the jury, and the probative value of the testimony was far outweighed by the danger of unfair prejudice.

On appeal, Appellant argues Garcia might have been more aggressive because of the drugs in his system and consequently, the trial court should have admitted the evidence as support for Appellant's defensive theory that Garcia was the first aggressor. Given the proffered testimony, we cannot find the trial court abused its discretion in excluding this testimony. Appellant did not explain how the unconfirmed result of the metabolized THC would have altered Garcia's judgment so that he was more aggressive and thus, was the first aggressor in the incident leading to his death. As such, Appellant's assertion is nothing more than speculation. Accordingly, the trial court was within its discretion to conclude this evidence was not relevant and would serve only to confuse the issues before the jury. For these reasons, the trial court was within its discretion to determine that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. *See also Martinez*, 327 S.W.3d at 736.

Consequently, we overrule Appellant's second issue.

### ISSUE FIVE—SUFFICIENCY OF EVIDENCE TO SUPPORT THE OFFENSE OF UNLAWFUL POSSESSION OF A FIREARM BY A FELON

By his fifth issue, Appellant asserts the State failed to present evidence of the date on which Appellant was released from confinement and thus, the trial court erred when it denied his motion for a directed verdict as to the charge of unlawful possession of a firearm by a felon.

11

As an appellate court, we review a trial court's ruling on a motion for directed verdict under the same standard of review we would use in a review of the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 483 (Tex. Crim. App. 1996) (citing *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993)). Under that standard, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017) (citing *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). We give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016) (citations omitted). Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.*

Here, the State charged Appellant with the offense of unlawful possession of a firearm by a felon under section 46.04(a)(2) of the Penal Code. *See* TEX. PENAL CODE ANN. § 46.04(a)(2) (West Supp. 2019). This statute makes it a crime for any person to possess a firearm, at any location other than the premises where he lives, after being convicted of a felony, and after the "fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later[.]" *Id.*

12

As Appellant notes, the State presented a judgment setting forth his conviction for injury to an elderly person, dated October 17, 2012. The judgment indicates Appellant was sentenced to imprisonment in a state jail facility for a period of ten months and that he had forty-four days of jail time credit at the time of sentencing. It is undisputed that the alleged date of the offense was August 28, 2018. Because the judgment does not contain the date on which Appellant was released from confinement, a date Appellant argues is required to prove an essential element of the offense, he contends the trial court erred by not granting his motion for directed verdict.

The State concedes it did not present evidence of the date on which Appellant was released from confinement. Instead, it argues that "[d]etermining whether Appellant possessed a firearm more than five years after his release from confinement is a simple matter of mathematics." It argues the jury was required only to add ten months to the date of Appellant's arrest on September 3, 2012,[6] making his release date July 3, 2013. Furthermore, even if the time credits were not properly applied and the jury added ten months to the date of sentencing (October 17, 2012), Appellant's release date would have been August 17, 2013. Either way, the State argues, the evidence is sufficient to satisfy the requisites of the statute because either date falls outside the five-year period as required under section 46.04(a)(2). Viewing the evidence in the light most favorable to the verdict, because the undisputed evidence also showed Appellant possessed a firearm at a location other than the premises at which he lived, we find a rational jury could have

_____

[6] Appellant was arrested on September 3, 2012, and he remained in custody following his arrest, entitling him to forty-four days of jail time credit at the time of his plea.

concluded the evidence satisfied the requirements of section 46.04(a)(2).[7]  As such, the

trial court did not err when it denied Appellant's motion for a directed verdict.

We resolve Appellant's fifth issue against him.

**ISSUE SIX—REFUSAL TO SUBMIT DEFENSIVE INSTRUCTION REGARDING SUDDEN PASSION**

In his last issue, Appellant complains the trial court erred when it refused to submit

to the jury his requested defensive instruction concerning sudden passion.  He contends

sudden passion was raised by his testimony that Garcia approached him in an aggressive

manner and reached into his waistband and by his own testimony that he feared for his

life because of these actions and the prior instance in which Garcia shot at him.

When an accused acts under the immediate influence of sudden passion, arising

from an adequate cause, in the commission of the offense of murder, the range of

punishment moves from that of a first degree offense, punishable by confinement for a

period of five to ninety-nine years, or life, and a fine of up to $10,000, to that of a second

degree felony, punishable by confinement for a period of two to twenty years, and a fine

of up to $10,000.  *See* TEX. PENAL CODE ANN. § 19.02(d) (West 2019).  The issue of

sudden passion is appropriately presented to a jury by the submission of a special issue

during the punishment phase of trial.  *See Kitchens v. State*, No. 01-18-00518-CR, 2019

Tex. App. LEXIS 10417, at *23-29 (Tex. App.—Houston [1st Dist.] Dec. 3, 2019, no pet.)

(mem. op., not designated for publication) (citing TEX. PENAL CODE ANN. §§ 12.33(a),

---

[7] We note also that during his testimony, Appellant admitted he was a convicted felon and was not permitted to have a gun.

14

19.02(d)).  In order to be entitled to the submission of a sudden-passion jury instruction, the record must "at least minimally" support the following inferences:

1. that the defendant was acting under the immediate influence of passion, such as terror, anger, rage, or resentment;

2. that his sudden passion was in fact induced by some provocation by the deceased, which provocation would commonly produce such a passion in a person of ordinary temper;

3. that he committed the murder before regaining his capacity for cool reflection; and

4. that a causal connection existed between the provocation, passion, and homicide.

*See Kitchens*, 2019 Tex. App. LEXIS 10417, at *24 (citing *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013); *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005)).

It is the defendant's burden to prove the issue of sudden passion arising from an adequate cause at the punishment hearing by a preponderance of the evidence. *Kitchens*, 2019 Tex. App. LEXIS 10417, at *24-25 (citing TEX. PENAL CODE ANN § 19.02(d)).  "Sudden passion" is passion "directly caused by and arising out of provocation by the individual killed or another acting with the person killed, which passion arises at the time of the offense and is not solely the result of former provocation."  *Id.* at *27 (citing TEX. PENAL CODE ANN. § 19.02(a)(2)).  Sudden passion has been described as "an excited and agitated state of mind at the time of the killing caused by direct provocation by the victim."  *Id.* at *27 (citing *Benavides v. State*, 992 S.W.2d 511, 526 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (en banc) (citing *Hobson v. State*, 644 S.W.2d 473, 478 n.10 (Tex. Crim. App. 1983)).  "Adequate cause" is defined in the penal code as a "cause that

would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Kitchens*, 2019 Tex. App. LEXIS 10417, at *26 (citing TEX. PENAL CODE ANN. § 19.02(a)(1)). Adequate cause contains both objective and subjective components. *Kitchens*, 2019 Tex. App. LEXIS 10417, at *26 (citing *McCartney v. State*, 542 S.W.2d 156, 160 (Tex. Crim. App. 1976)). "It is objective because it views the alleged provocation through the eyes of the ordinary man." *Kitchens*, 2019 Tex. App. LEXIS 10417, at *26 (citation omitted). Evidence of a cause which produced anger, rage, resentment, or terror in the accused because of the accused's susceptibilities "is not sufficient unless the cause would also produce the response in an ordinary person." *Id.* (citing *Merchant v. State*, 810 S.W.2d 305, 310 (Tex. App.—Dallas 1991, pet. ref'd)). However, adequate cause is also subjective because the fact finder must view the circumstances from the actor's standpoint in order to determine "the condition of the mind of the accused at the time of the offense . . . ." *Kitchens*, 2019 Tex. App. LEXIS 10417, at *26 (citations omitted). "Fear" means "to be afraid of," and "terror" is defined as "a state of intense fear." *Id.* at *27 (citing *Wooten*, 400 S.W.3d at 606-07 & n.29). A "mere claim of fear" by a defendant is not, alone, sufficient to establish the existence of sudden passion. *Kitchens*, 2019 Tex. App. LEXIS 10417, at *26 (citations omitted). It is only such fear, if provoked by the person killed or by someone acting with that person, that would produce such a degree of terror as would be sufficient to overcome the rational functioning of the mind that would meet the statutory requirement of sudden passion. *Id.* (citations omitted).

To be entitled to a sudden-passion jury instruction, the defendant must first show the record contains objective evidence of direct provocation by the victim or someone

acting with the victim occurred at the time of the killing. *Id.* at *28 (citation omitted). The defendant must then show "evidence from which the jury could subjectively decide the accused killed the victim while in an excited and agitated state of mind arising out of the direct provocation. There must be evidence that the accused acted in the throes of actual, subjective passion." *Id.* (citation omitted).

Furthermore, sudden passion and self-defense are not mutually exclusive. *Id.* Thus, a jury's rejection of self-defense does not necessarily preclude a sudden-passion instruction. *Id.* at *28 (citing *Beltran v. State*, 472 S.W.3d 283, 290 (Tex. Crim. App. 2015)). It is often difficult to discern evidence raising self-defense from evidence raising sudden passion and consequently, trial courts are well-advised to give both instructions when requested. *Kitchens*, 2019 Tex. App. LEXIS 10417, at *28 (citation omitted). The trial court should give a jury instruction on sudden passion if it is raised by the evidence, "even if that evidence is weak, impeached, contradicted, or unbelievable, but the evidence cannot be so weak, contested, or incredible that it could not support such a finding by a rational jury." *Id.* (citation omitted). As an appellate court, our duty is to consider the evidence supporting the charge of sudden passion rather than the evidence refuting it. *Id.* (citing *Beltran*, 472 S.W.3d at 294).

Here, Appellant presented little more than his own assertion of fear and reference to a single prior provocative act by Garcia. We do not have a situation like that present in *Kitchens* in which the victim, appearing to be a "biker," came into the defendant's shop, and demanded the whereabouts of a man who was not there. *Kitchens*, 2019 Tex. App. LEXIS 10417, at *29-30. There, the victim appeared to be angry, made threatening gestures, and threatened to beat up the defendant. *Id.* A witness testified he heard the

17

victim yelling. *Id.* The defendant shot the victim because he thought the much larger man was going to kill him. *Id.* at *30. He also believed this because the man was a large stranger who thought the defendant was hiding someone from him and was angry about that. *Id.* In *Kitchens*, the defendant thought the victim had decided to follow through on his threat to beat him to death or seriously hurt him. *Id.* Under those facts, the appellate court found the evidence was sufficient to support the submission of a sudden passion instruction to the jury.

Our situation is more analogous to the situation in *Pham v. State*, 595 S.W.3d 769 (Tex. App.—Houston [14th Dist.] 2019, no pet.), where the defendant claimed he was entitled to a sudden passion instruction based on his testimony that "the sudden actions of the complainant showed that he was armed; which put [the defendant] in fear for his life." *Id.* In that case, the appellate court concluded the defendant was not entitled to a sudden passion instruction because "no evidence demonstrate[d] [the defendant] acted under the immediate influence of terror, anger, rage, or resentment . . . ." *Id.*

Here, two witnesses testified Garcia did not act aggressively towards Appellant the day he was shot. Appellant said Garcia approached him, exchanged some words with him, and then quickly came towards him "in [an] aggressive way." Appellant answered "no" when asked whether Garcia seemed frightening. Appellant said Garcia then "came towards [him] and reached towards his shorts, his waistline." Appellant was not sure Garcia was armed that day and he even testified he had seen Garcia "all the time" between the incident the previous month and that day with "[n]o trouble." He nevertheless told the jury he feared for his life that particular day and thought Garcia was going to shoot him. Appellant's testimony was little more than a subjective assertion of fear based on,

18

at most, (1) a single prior act of provocation, i.e., the incident for which Vasquez was present, and (2) his own testimony that Garcia reached towards his waistband. There is simply no other evidence that Appellant was acting under the immediate influence of terror, anger, rage, or resentment. We thus conclude the trial court did not err in refusing Appellant's request to include a sudden passion instruction in the charge to the jury.

As such, we resolve Appellant's last issue against him.

**CONCLUSION**

Having overruled each of Appellant's six issues, we affirm the judgments of the trial court.

Patrick A. Pirtle
Justice

Do not publish.